IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DICE COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ALFRED ZAPPOLO, JEFFREY MELTZER, PETER IOVINO, ANEUDYS PINEYRO, KEATON PRETE, THOMAS MCCARTHY, NICHOLAS CARMARDI, BETH SCELZA, and LANROVER NETWORK SERVICES, INC.,<br><br>Defendants. | 8:23CV155<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court after a hearing on Plaintiff Dice Communications Inc.'s ("Dice") motion for a preliminary injunction, Filing No. 13. This is an action for breach of noncompetition and nondisclosure agreements, misappropriation of trade secrets under Neb. Rev. Stat. § 87-504, breach of duty of loyalty, tortious interference with employment and business relationships, violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., and the Stored Communications Act, 18 U.S.C. § 2701 et seq., and conspiracy. This action was removed from state court pursuant to 28 U.S.C. § 1441. Jurisdiction is based on diversity of citizenship. Before the action was removed to this court, the Douglas County, Nebraska, District Court entered a temporary restraining order ("TRO") on an *ex parte* motion, and this court later continued that TRO, pending this hearing. Filing No. 1, Notice of Removal at 41-44, TRO; Filing No. 17, Order.[1]

---

[1] To the extent the plaintiff contends that the defendants violated the TRO then in force, those arguments are moot in light of the court's resolution of this motion, which is deemed retroactive.

1

I.  BACKGROUND

The following is a summary of the facts alleged in Dice's complaint and evidence adduced at the hearing. See Filing No. 1, Complaint; Filing Nos. 15, 24, and 36, Indexes of Evid.; Filing No. 41, Exhibit List. The record shows that Dice provided information technology services to K-12 school districts, including the Amityville Union School District in the State of New York, as an authorized partner of Alcatel-Lucent Enterprises. The individual defendants were all previously employed by Dice as a Sales Director, a Solutions Analyst, systems engineers, and an Office Administrator. Except for defendants Zappolo and Meltzer, all of the individual Defendants were working on site at the Amityville project in New York. Dice hired defendant LANRover as a subcontractor for the telephone component of the Amityville Project. All of the individual defendants executed noncompetition and nondisclosure agreements.[2]

Sometime in March 2023, defendants Zappolo and Meltzer resigned from Dice. Thereafter, they allegedly deleted emails and/or forwarded emails to personal email accounts. Dice alleges that Zappolo used confidential information to induce Alcatel Lucent Enterprises to use LANrover as an authorized business partner. Dice's contract for the Amityville project was terminated effective April 6, 2023.

On or about April 7, 2023, defendants Iovino, Pineyro, Prete, McCarthy, Carmardi, and Scelza resigned from their employment with Dice and commenced employment with defendant LANrover. They continued to work on the Amityville project, which was effectively taken over by LANRover.

---

[2] Defendant Camardi moved to dismiss for lack of personal jurisdiction based on the allegation that Dice had not produced any agreement physically or electronically signed by Camardi that contained a forum selection clause. Filing No. 26. That motion has been withdrawn. Filing No. 42; see also Filing No. 37-1, noncompetition and nondisclosure agreement.

2

Dice alleges that it maintains a comprehensive compilation of information regarding its customers and their servicing needs and history in the course of its business. It alleges that, as part of their employment, the individual defendants had access to the compilation of its methods and operations of its business, its trade secrets and confidential information.[3] Dice contends that the individual defendants have disclosed or utilized its confidential Information and trade secrets in their new employment with defendant LANRover, who is now a direct competitor of the plaintiff.

Dice seeks an order immediately enjoining and restraining the defendants from: soliciting or accepting any business from Dice's customers or former customers with whom any of the individual defendants had personal contact and actually did business during the last year of their respective employment with Dice; misappropriating, using, disclosing, or transmitting its trade secrets or confidential information; or soliciting, recommending, recruiting or inducing any other Dice employees from leaving their employment. Dice further seeks an order requiring the defendant to return all information, data, documents, or materials that are the property of Dice.

II.   LAW

When evaluating whether to issue a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public

---

[3] This includes information about its customers, customer requirements, customer background data, and customer needs (including quantity of resources and location of resources needed by customers, as well as how frequently customer need arises); its pricing process and pricing rates; its databases, technical policies and procedures, marketing strategies, and other confidential information such as price quotes, drawings, photographs, customer contact information.

3

interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant. *Roudachevski*, 648 F.3d at 701, 705. No single factor is determinative, although the failure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. *See Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996); *see also Mod. Computer Sys., Inc. v. Mod. Banking Sys., Inc.*, 871 F.2d 734, 738 (8th Cir. 1989) (en banc).

Success on the merits has sometimes been referred to as the most important of the four factors, but it is insufficient on its own. *Roudachevski*, 648 F.3d at 706. With respect to probability of success, it is not necessary for the movants to prove they are more likely than not to prevail, the movants "need only show a reasonable probability of success, that is, a fair chance of prevailing" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013).

Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm. *Roudachevski*, 648 F.3d at 706. The threat of irreparable harm is necessary to prove the propriety of preliminary injunctive relief. *Id.* To succeed in demonstrating a threat of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Id.* (quoting *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996)).

The absence of irreparable injury is by itself sufficient to defeat a motion for a

preliminary injunction. *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015).

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Enterprises, LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). "[E]conomic loss, on its own, is not an irreparable injury so long as the losses can be recovered." *Chlorine Institute, Inc.*, 792 F.3d at 915 (quoting *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013)). A possibility of irreparable harm is not sufficient to justify a preliminary injunction; the movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 992 (8th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original)).

The primary question when applying the balance-of-harms factor is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Systems, Inc.*, 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). With respect to the public interest factor, courts have held that the public interest favors a fair, competitive marketplace. *See e.g. Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1134 (D. Minn. 1996).

A "trade secret" is defined under the Nebraska Trade Secrets Act as "information,

5

including, but not limited to, a drawing, formula, pattern, compilation, program, device, method, technique, code, or process that: (a) derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Neb. Rev. Stat. § 87-502(4). The elements necessary to establish a cause of action for misappropriation of a trade secret are (1) the existence of a trade secret or secret manufacturing process, (2) the value and importance of the trade secret to the employer in the conduct of his business, (3) the employer's right by reason of discovery or ownership to the use and enjoyment of the secret, and (4) the communication of the secret to the employee while he was employed in a position of trust and confidence and under circumstances making it inequitable and unjust for him to disclose it to others or to use it himself to the employer's prejudice. *Richdale Dev. Co. v. McNeil Co.*, 508 N.W. 2d 853 (Neb. 1993). Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as its secret; a trade secret is something known to only a few and not susceptible of general knowledge. *Id.*

Whether allegedly protected information rises to the level of a trade secret under the Trade Secrets Act is a question of fact. *Home Pride Foods v. Johnson*, 634 N.W.2d 774, 781 (Neb. 2001). A customer list is the type of information that may, in some industries, be treated as trade secret information under the Uniform Trade Secrets Act. *See id.* Courts are reluctant, however, to protect customer lists to the extent that they embody information that is readily ascertainable through public sources. *Id.* "[O]rdinarily, an employer has no legitimate business interest in postemployment prevention of an

employee's use of some general skill or training acquired while working for the employer, although such on-the-job acquisition of general knowledge, skill or facility may make the employee an effective competitor. . . ." *Id.* Also, knowledge of industry contact people does not rise to the level of a trade secret because this type of unprotected information is readily ascertainable within a trade. *Fox Sports Net N., L.L.C. v. Minnesota Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003) (applying Minnesota law).

Generally, an employer can protect itself against postemployment unfair competition by an employee and protect "special information about customers, both current and prospective, that an employee obtains by virtue of employment" through execution of a valid noncompetition covenant. *See Chambers-Dobson, Inc. v. Squier*, 472 N.W.2d 391, 401 (Neb. 1991). Covenants not to compete must be reasonable in terms of restraint of trade principles in order to be enforceable. *Philip G. Johnson & Co. v. Salmen*, 317 N.W.2d 900, 903 (Neb. 1982). A covenant not to compete is valid only if the restriction is no greater than reasonably necessary to protect an employer's legitimate interest. *Vlasin v. Len Johnson & Co.*, 455 N.W.2d 772, 776 (Neb. 1990). Under Nebraska law, a covenant not to compete is only valid if it restricts the former employee from soliciting or working for clients of the former employer with whom the former employee had contact. *See Mertz v. Pharmacists Mut. Ins. Co.*, 625 N.W.2d 197, 204-05 (Neb. 2001); *see also H & R Block Tax Servs., Inc. v. Circle A Ent., Inc.*, 693 N.W.2d 548, 554 (Neb. 2005). This test is applied strictly. *H & R Block*, 693 N.W.2d at 554.

To establish a claim for tortious interference with a business relationship under Nebraska law, a plaintiff must prove: (1) the existence of a valid business relationship or expectancy; (2) the defendant had knowledge of the relationship or expectancy; (3) the

7

defendant committed an unjustified intentional act of interference with the relationship; (4) causation; and (5) damages.  *Macke v. Pierce*, 661 N.W.2d 313, 317 (Neb. 2003).  In order to constitute actionable interference with an employment relationship, the actions of a co-employee must be shown to have been committed in furtherance of some purpose other than the lawful purposes of the employer.  *Huff v. Swartz*, 606 N.W.2d 461,468 (Neb. 2000).  Such interference must be "unjustified" in order to be actionable.  *Id.* (listing factors to consider in determining whether interference with a business relationship is unjustified).

III.    DISCUSSION

Based on the evidence at this stage of the litigation, the plaintiff has not sustained its heavy burden to show that injunctive relief is necessary.  The *Dataphase* factors do not favor issuance of an injunction.  First, and most importantly, Dice has not demonstrated he probability of irreparable harm.  It appears that any damage to or elimination of business opportunities can be remedied by money damages.  The amount of business lost to a competitor by reason of the defendants' allegedly wrongful acts is quantifiable.  Because there is an adequate remedy at law, Dice has not shown that the extraordinary relief of a preliminary injunction is necessary.  The harm allegedly suffered by the plaintiff can be adequately compensated through an award of monetary damages.

Further, Dice has not shown a probability of success on the merits of its claims. Dice relies on a "comprehensive compilation of information regarding its customers and their servicing needs and history" as its alleged trade secrets.   It has not shown that its pricing information is not available elsewhere in connection with bids to a public entity such as a school district.  In short, it has not shown that the vaguely defined compilation

8

of information allegedly misappropriated was secret. It has also failed to establish that the individual defendants have possession or access to such information or that they are actually using it or misappropriating it in their employment with LANRover. Further, the balance of equities and the public interest weigh in favor of denial of injunctive relief. Accordingly,

IT IS ORDERED that

1. The TRO presently in force (Filing No. 17) is dissolved.

2. The plaintiff's motion for a preliminary injunction (Filing No. 13) is denied.

Dated this 6th day of June, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge